# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**KEVIN M. RIELLY**,                                          Chapter 7
                                                              Case No. 15-15003-JNF
       Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Motion for Sanctions Against E.I. Franchise
Company and Request for Emergency Determination" (the "Motion") filed by the
Chapter 7 debtor, Kevin M. Rielly (the "Debtor"), through which he seeks a
determination that E.I. Franchise Company, LLC ("E.I.") willfully violated the automatic
stay when it attached and levied on the Debtor's checking and brokerage accounts
pursuant to a state court trustee process order and refused to release the attachments on
those accounts despite notice of the commencement of the bankruptcy case. Based on the
asserted stay violation, the Debtor seeks actual damages, attorneys' fees and costs as well
as punitive damages pursuant to 11 U.S.C. § 362(k)(1). E.I. filed an Opposition to the
Motion, and the Debtor filed a Supplement to the Motion. The Court conducted a
nonevidentiary hearing on January 8, 2016, deemed the Motion and Opposition to be a
contested matter, and scheduled an evidentiary hearing due to the existence of disputed
issues of material fact.

At the evidentiary hearing held on January 14, 2016, the Court advised the parties that it would hear evidence on the issue of whether E.I. willfully violated the automatic stay and that a determination of damages, if appropriate, would be the subject of a later hearing.  Two witnesses, including the Debtor, testified at the evidentiary hearing, and 17 exhibits were introduced into evidence. Both parties submitted requests for proposed findings of fact and conclusions of law.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b) and the order of reference from the United States District Court for the District of Massachusetts.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Based upon a review of the evidence submitted at the evidentiary hearing and the entire course of proceedings in this case,[1] the Court now makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  For purposes of background, the Court has also taken notice of the averments in the Motion, the Supplement and the Opposition.

## II. FACTS AND PROCEDURAL HISTORY

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 30, 2015 (the "petition date") together with all Schedules and Statements. Stewart F. Grossman was appointed the Chapter 7 trustee (the "Trustee").  The Section 341 meeting of creditors was scheduled for February 4, 2016, and notice of the meeting

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

was sent to creditors on January 4, 2016.  In response to Question 12 on the voluntary

petition, "Are you a sole proprietor of any full-or part-time business?" the Debtor listed

"Kevin Rielly, dba Joppa Business Solutions" with an address of 29 Maple Street, West

Newbury, Massachusetts, which is also the Debtor's home address.  On his Schedule

A/B: "Property," the Debtor listed the following financial accounts in response to Item

17 entitled "Deposits of Money:" a business checking account with a balance of $2,155.48

(the "Joppa checking account"),[2] a personal checking account with a balance of $249.42,

and a brokerage/investment account with TD Ameritrade with a balance of $14,713.48

(the "brokerage account").  Other than the reference to TD Ameritrade, the Debtor did

not list the names of the institutions where the accounts were located or the applicable

account numbers, although the Debtor held both checking accounts at Citizens Bank.  On

his original Schedule C: "The Property You Claim as Exempt," the Debtor selected the

federal exemptions pursuant to 11 U.S.C. § 522(b)(2) and claimed the following amounts

in his financial accounts as exempt pursuant to § 522(d)(5): the full balances in the Joppa

checking account ($2,155.48) and the personal checking account ($249.42) and $6,573.10

of the $14,713.48 held in the brokerage account.  On Schedule E/F: "Creditors Who Have

Unsecured Claims," the Debtor listed E.I. with a nonpriority unsecured claim in the

amount of $90,644.49.

---

[2] As Joppa is the Debtor's unincorporated sole proprietorship, the funds in the Joppa
checking account constitute the individual Debtor's asset.

On January 5, 2016, the Debtor filed the Motion in which he represented that he sought bankruptcy relief as a result of a failed business he owned and operated as a franchisee of E.I. called Upper Deck Training, which did business as "Extra Innings," a baseball/softball training facility in Woburn, Massachusetts.  According to the Debtor, he learned that E.I. attached and levied on the Joppa checking and the brokerage accounts on Thursday December 31, 2015, one day after the petition date.  The Debtor asserted that immediately upon learning of the attachment of the accounts, his counsel contacted E.I.'s counsel to request that the attachments be released and that the attached funds be returned to the Debtor, but that E.I failed and refused to do so.  The Debtor filed the Motion seeking damages, costs and fees for E.I.'s alleged willful violation of 11 U.S.C. § 362(a)(1), (2), (3) and (6). To the extent E.I. asserted that it is a secured creditor with respect to the funds in those accounts, the Debtor maintained that it also violated 11 U.S.C. § 362(a)(4) and (a)(5).

In its Opposition, E.I. asserted that the Debtor owes it a total of $114,971.39, exclusive of attorneys' fees and costs, stemming from an unpaid 2014 judgment which arose due to the Debtor's breach of a franchise agreement with E.I.  It maintained that its "temporary" refusal to release its trustee process attachments on the accounts did not violate the stay, its status as a secured creditor entitles it to seek adequate protection, that any obligation it has to release the attachments is an obligation owed to the Trustee, not the Debtor, and that it is entitled to reasonable time to seek relief from stay to obtain adequate protection of its interests and to comply with any turnover obligation. It also asserted that upon the Debtor's request for release of the trustee process attachments, it

4

had requested the Debtor provide it with assurances that he would "not dispose of the assets and put them out of reach of creditors and the duly-appointed Trustee." According to E.I., the Debtor refused to give any such assurance. E.I. also asserted in the Opposition that it would shortly file a motion for relief from stay.[3]

As stated above, the Court conducted a nonevidentiary hearing on January 8, 2016, at which counsel to the Trustee was also present. The Debtor represented that a deposit of $1,110.04 in prepetition wages was made into the Joppa checking account postpetition on December 31, 2015, one day after the filing of the petition. Counsel to the Trustee stated that the Debtor would have to amend his Schedule C to account for the increased balance in the Joppa checking account as those funds would otherwise be nonexempt as a prepetition account receivable of the Debtor and that any increased exemption claimed in that account would reduce the available exemption in the brokerage account. He also asserted that to the extent that E.I.'s liens on the accounts are voidable as preferences pursuant to 11 U.S.C. § 547, they are preserved for the benefit of the estate pursuant to § 551. At the conclusion of the hearing, the parties reported their agreement that the Debtor would amend his Schedule C and take possession of the exempt portion of the accounts and that E.I. would reserve its rights with respect to nonexempt portion of the accounts. The Trustee reported that the value of the brokerage account, which contained stock, was

---

[3] Although the caption of the Opposition reads "Opposition of E.I. Franchise Company, LLC to Debtor's Emergency Motion for Sanctions and Motion for Temporary Relief from the Automatic Stay," E.I. did not pay a filing fee in connection with the Opposition. It also indicated in the Opposition that it would file a separate motion for relief from stay. Accordingly, the Court will not treat the Opposition as a motion for relief from stay.

subject to fluctuations in the stock market.  The Court set the Motion for evidentiary

hearing on January 14, 2016.

On January 13, 2016, the Debtor amended his Schedule A/B to increase the amount

contained in the Joppa checking account from $2,155.48 to $3,171.92.  He also amended

his Schedule C to increase the amount of his exemption in the Joppa checking account

from $2,155.48 to $3,171.92 and to decrease his exemption in the brokerage account from

$6,573.10 to $5,556.66.  The following day, January 14, 2016, the Debtor filed Proposed

Findings of Fact and Conclusions of Law, and the Court conducted the evidentiary

hearing on the Motion.[4]   To date, the Trustee has not commenced an adversary

proceeding against E.I. or any other party for the recovery of any avoidable transfer

pursuant to 11 U.S.C. §§ 547, 549 and 551, nor has the Debtor sought avoidance of E.I.'s

attachments pursuant to 11 U.S.C. § 522(f) or (h).

## III. EVIDENCE ADDUCED AT TRIAL

The parties submitted a number of agreed exhibits to establish the debt owed to

E.I. by the Debtor.  E.I. entered into a franchise agreement (the "Agreement") with the

Debtor on December 1, 2004.  It obtained an Award from the American Arbitration

Association jointly and severally against the Debtor and his company, Upper Deck

Training, LLC, dated January 23, 2014, in the amount of $90,138.69, plus interest and

administrative fees and expenses, due to material breaches of the Agreement by the

---

[4] The Debtor's Proposed Findings of Fact was premature as the document was filed
prior to the evidentiary hearing. The document is relevant with respect to the proposed
conclusions of law.

Debtor and Upper Deck Training. On February 18, 2014, E.I. obtained a Judgment Confirming Arbitration Award against the Debtor and Upper Deck Training from the Essex County Superior Court in the amount of $94,217.69 (the "Judgment"). Approximately ten months later, on December 22, 2014, E.I. obtained an Execution on the Judgment in the amount of $94,975.92, which includes costs and post-judgment interest. On December 16, 2015, pursuant to Mass. Gen. Laws ch. 246, § 1 and Mass. R. Civ. P. 4.2(g), E.I. obtained an Ex Parte Order for Trustee Process (the "Trustee Process Order") from the Middlesex County Superior Court in the amount of $120,471.39 against the Debtor and trustee defendants TD Ameritrade and Citizens Financial Group, Inc., d/b/a Citizens Bank ("Citizens"), giving E.I. the power to attach "the goods, effects, and credits of the [Debtor] in the hands and possession of the . . . trustee[s]." The Trustee Process Order contained a finding which provided in part:

> "THERE IS A CLEAR DANGER THAT THE DEFENDANT, IF NOTIFIED IN ADVANCE OF THE ATTACHMENT ON TRUSTEE PROCESS, WILL WITHDRAW THE GOODS, EFFECTS OR CREDITS FROM THE HANDS AND POSSESSION OF THE TRUSTEE AND REMOVE THEM FROM THE COMMONWEALTH OR WILL CONCEAL THEM , . . ."

In furtherance of the Trustee Process Order, the Middlesex Superior Court issued a separate Summons to Trustee to Citizens and TD Ameritrade. According to the "Proof of Service of Process" contained on the Summonses, Constable Lawrence Hickey certified that he served a copy of the respective Summonses, and supporting documentation, on Citizens and TD Ameritrade by hand on the same date as the issuance of the Trustee Process Order, December 16, 2015. A separate Summons also was issued to the Debtor

and was served on him by hand, with supporting documentation, by Constable Hickey

on December 22, 2015.

E.I. introduced into evidence the answer and the amended answer of Citizens to

the Trustee Process Summons.  The original answer, dated December 21, 2015, reflected

that at the time the summons was served on it, it had "NO FUNDS" of the Debtor in its

possession.  The amended answer, dated January 11, 2016, reflected that, at the time the

summons was served on it, it had "NO FUNDS" of the Debtor in its possession but did

have $3,046.92 in funds held by Joppa Business Solutions.  E.I. also introduced the

response of TD Ameritrade to the Trustee Process Summons, dated December 31, 2015,

which contained an "Affidavit of Garnishee" reflecting that TD Ameritrade was served

with the Trustee Summons on December 18, 2015[5] and that it had an account in the name

of the Debtor containing $15,289.58 at the time of service. The response also reflected that

TD Ameritrade was in receipt of the Summons to Trustee and that it had "restrained" the

account in the Debtor's name and would continue to do so "until further instructions are

received."

The Debtor testified that he currently works as a bookkeeper through his d/b/a,

Joppa Business Solutions, and also is employed by a company as an accountant.  He

testified that he started a baseball/softball training business in 2004 as a franchisee of E.I.

The company was called Upper Deck Training, but it operated under the trade name

---

[5] This date is two days after the date provided in the "Proof of Service of Process"
contained on the TD Ameritrade Summons, but is still well before the petition date of
December 30, 2015.

"Extra Innings." He executed the Agreement on December 1, 2004 and opened the training facility in February 2006. According to the Debtor, he closed the business in August 2013 and was left with more than $700,000 in debt. The Debtor testified that following the arbitration award, E.I. initiated a supplementary process action against him, resulting in a court order to pay E.I. $500 per month beginning in October, 2015. The Debtor testified that he was unable to pay those amounts and that on December 17, 2015 he was held in contempt and incarcerated until he paid E.I. the sum of $1,500 through his debit card.

As noted above, the Debtor filed his voluntary Chapter 7 petition on the morning of December 30, 2015. He testified that he regularly checked the status of his Citizens and TD Ameritrade accounts, which contained penny stocks, online and that he had full access to the accounts until the evening of December 30th when his debit card was declined when he tried to purchase gasoline. He checked his Citizens accounts online on December 31, 2015. A screen shot of the Debtor's Citizens online account page reflected that the Debtor received an alert that the "Account has been inactivated 12/31/2015." The Debtor stated that he called Citizens Bank on December 31st and was told that his account had been "seized." This account was apparently the Joppa checking account into which, the Debtor testified, most of his income was deposited.[6] He further testified that he later went to a Citizens branch in Woburn, Massachusetts and asked for a printed

---

[6] The Debtor testified that his personal checking account at Citizens was not attached or otherwise affected by the Trustee Process Order.

9

account transaction report.  This report contained a notation: "CAUTION: There is 1 stop/hold for this account" and the stop/hold amount is listed as $120,471.39, the same amount reflected in the Trustee Process Order. The Debtor testified that he learned on December 31st that his brokerage account also had been frozen.  The Debtor also submitted evidence of the direct deposit of $1,110.04 into his Joppa checking account on December 31, 2015, which necessitated his amendment of Schedule C.

On cross-examination, the Debtor conceded that, although he first confirmed that his accounts were inaccessible on December 31st, he had received notice of the trustee process attachment on December 22, 2015, although he stated that he "didn't understand the paperwork" he received.   When asked whether he was aware of anything E.I. had done after December 17th to collect its debt from him, he replied "I don't believe so." While the Debtor maintained that the amounts in the Joppa checking and brokerage accounts had been seized, he could not establish that E.I. took possession of the funds, stating: "All I know is that I don't have access to it."[7]

Upon confirming that his accounts were inaccessible, the Debtor testified that he contacted his bankruptcy counsel.  The Debtor introduced into evidence a letter from his bankruptcy counsel, Attorney Christopher M. Brine ("Attorney Brine"), to counsel for E.I., dated December 31, 2015, in which he advised E.I.'s counsel, Attorney Sheryl M.

---

[7] Despite the repeated reference to "seizure" of the accounts at the evidentiary hearing and in the pleadings, the Debtor presented no evidence that E.I. took possession of the funds in the accounts.  Based upon the evidence introduced at the evidentiary hearing, the Court concludes that Citizens and TD Ameritrade restrained the accounts pending resolution of this matter.

10

Bourbeau ("Attorney Bourbeau"), that the Debtor filed his bankruptcy petition on

December 30, 2015.  The letter contained a reference to the Debtor's bankruptcy case

number, and provided, in part:

> Pursuant to 11 U.S.C. § 362(a), all collection activity against [the Debtor] is
> stayed.  This includes any efforts by your client, EI Franchise Company, to
> garnish his wages, attach his bank account, or otherwise obtain involuntary
> payments from him.  Please confirm that all such actions are cancelled
> forthwith.

On cross-examination by E.I., the Debtor testified that he was "absolutely" aware

that some of the funds in the seized accounts were nonexempt at the time he demanded

release of the attachments.  He stated that it was his belief that some of the funds would

have to be turned over to the Trustee as they were nonexempt, a circumstance which he

confirmed with his attorney. The December 31st letter sent by Attorney Brine to Attorney

Bourbeau, however, made no reference to or distinction between exempt and nonexempt

funds.  The Debtor also testified that he was aware that E.I. had requested some

assurances from his attorney that he would not transfer any of the funds in the accounts

if E.I. were to agree to release the attachments.  He testified that he did not agree to give

that assurance to E.I. but that he would have given an assurance to the Trustee.  When

asked whether he or his counsel provided such assurance to the Trustee, the Debtor

replied: "I believe filing itself is assurance."

Michael Jarmusik ("Mr. Jarmusik"), the vice president of franchise development

of E.I., also testified.  He identified himself as one of the employees at E.I. who directs

legal strategy regarding collection of delinquent accounts.  Mr. Jarmusik worked directly

with the Debtor while he operated an E.I. franchise. He testified that he had direct

involvement with collection efforts against the Debtor and that he contacted Attorney Bourbeau to handle collection of the Judgment. With respect to obtaining the Trustee Process Order on an *ex parte* basis, he testified that E.I. was concerned that the Debtor would withdraw funds in his accounts if he were given advance notice of an attachment.

Mr. Jarmusik testified that he first became aware that the Debtor had filed a bankruptcy petition on Monday, January 4, 2016. On that same date, he also was notified by E.I.'s counsel that the Debtor had requested a release of the trustee process attachments on the funds held by Citizens and TD Ameritrade. He testified that he was advised by counsel not to release the attachments. He initially testified that he was not aware that the Debtor requested release of the attachments on December 31, 2015, but acknowledged that fact when shown a copy of an email sent by the Debtor's attorney to E.I.'s counsel on December 31st at 3:32 PM. He explained that he was not working on New Year's Eve and that E.I. was closed the following day, Friday January 1, 2016, a holiday, as well as the weekend dates of January 2nd and 3rd. Finally, Mr. Jarmusik testified that E.I. took no action, directly or through counsel, against the Debtor to collect any debt from him from December 17, 2015 through the petition date.

## IV. POSITIONS OF THE PARTIES

### A. The Debtor

The Debtor maintains that "because the funds . . . were seized postpetition, the seizures are void," citing Soares v. Brockton Credit Union, 107 F.3d 969 (1st Cir. 1997) and that the trustee process attachments are also voidable as preferences pursuant to 11 U.S.C. § 547. The Debtor also asserts that E.I. violated the automatic stay when it refused to

release the hold on the accounts, citing <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 103 S. Ct. 2309 (1983), <u>Thompson v. Gen. Motors Acceptance Corp., LLC</u>, 566 F.3d 699, 703 (7th Cir. 2009), <u>Knaus v. Concordia Lumber Co., Inc. (In re Knaus)</u>, 889 F.2d 773 (8th Cir. 1989), and <u>STMIMA Corp. v. Carrigg (In re Carrigg)</u>, 216 B.R. 303 (B.A.P. 1st Cir. 1998).  The Debtor also contends that E.I. was not entitled to condition its release of the attachments based upon a request for adequate protection because it was obligated to release the attachments *first* before requesting adequate protection, citing <u>Whiting Pools</u> and <u>Thompson</u>, *supra*.  Lastly, the Debtor maintains that E.I. is not entitled to adequate protection as the holder of void or avoidable liens.

    B.  <u>E.I.</u>

E.I. asserts that it did not violate the stay because it did not commence any action against the Debtor or take any action against him after the petition date and that it is entitled to adequate protection as the holder of prepetition attachments.  With respect to its postpetition refusal to release its attachments, E.I. argues that it did not violate the automatic stay because it never actually received any funds from the Debtor's accounts, and it never exercised dominion or control over the funds.  It contends that it "merely sought time to confer with the Trustee and seek relief from stay," in order to "allow the Trustee and the Court to preserve the assets of the estate for proper disposition under the Code." E.I. stresses that any obligation it had to release the attachments was an obligation it owed to the Trustee.  It also maintains that it is entitled to adequate protection of its secured interest in the absence of an avoidance action filed by the Trustee or the Debtor.

## V. DISCUSSION

The Debtor claims E.I. violated 11 U.S.C. § 362(a)(1) through (6),[8] and seeks

damages under 11 U.S.C. § 362(k)(1).  Section 362(k)(1) provides:

> (k)(1) Except as provided in paragraph (2), an individual injured by any
> willful violation of a stay provided by this section shall recover actual
> damages, including costs and attorneys' fees, and, in appropriate
> circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

"A debtor alleging a violation of the automatic stay has the burden to demonstrate,

by a preponderance of the evidence, that a violation of the automatic stay has occurred,

that the violation was willfully committed by the respondent, and that the debtor suffered

---

[8] Section 362(a) stays, *inter alia*:

> (1) the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action or
> proceeding against the debtor that was or could have been commenced
> before the commencement of the case under this title . . . ;
> (2) the enforcement, against the debtor or against property of the estate, of
> a judgment obtained before the commencement of the case under this
> title;
> (3) any act to obtain possession of property of the estate or of property from
> the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the
> estate;
> (5) any act to create, perfect, or enforce against property of the debtor any
> lien to the extent that such lien secures a claim that arose before the
> commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose
> before the commencement of the case under this title; . . .

11 U.S.C. § 362(a)(1) through (6).

damage as a result of the violation." In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009)

(footnote omitted, citations omitted).  To satisfy that burden, a debtor must establish that

the creditor had actual notice of the commencement of the case. Once the creditor receives

actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.

Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999) (citing Mitchell Const.

Co., Inc. v. Smith (In re Smith ), 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995)).  A willful

violation does not require a specific intent to violate the automatic stay. Kaneb, 196 F.3d

at 269.  "The standard for a willful violation of the automatic stay under § 362[k] is met if

there is knowledge of the stay and the defendant intended the actions which constituted

the violation." Id.

    There is no question that the Debtor notified E.I. of the bankruptcy filing on

December 31, 2015, when his counsel contacted E.I.'s counsel through an email and a

written letter.  Although Mr. Jarmusik maintains that he did not know about the

bankruptcy filing until the next business day, January 4, 2016, the delay is immaterial

because the Debtor proffered no evidence that E.I. took any actions after the petition date.

The Debtor first became aware that he had lost access to his accounts on December 30th,

a circumstance that he confirmed with Citizens and TD Ameritrade on December 31st.

All actions to secure and serve the Trustee Process Order taken by E.I. occurred prior to

the petition date.  E.I. obtained the Trustee Process Order from the Middlesex Superior

Court on December 16, 2015 and served the respective summonses on TD Ameritrade

and Citizens on the same date.  Although the "Affidavit of Garnishee" contained on the

response of TD Ameritrade to the Trustee Summons reflects that it received the Summons

on December 18, 2015, that date is almost two weeks prior to the petition date.   The

December 31, 2015 letter from TD Ameritrade advising E.I. that it had "restrained" the

Debtor's account was dated one day after the petition date, but this action was not taken

by E.I.

To the extent the Debtor complains that his accounts first became inaccessible after

the petition date due to the prepetition Trustee Process Order, he has failed to show that

E.I. exercised any control or influence over the postpetition actions of the third party

institutions where the funds were located.  Indeed, as noted above, E.I. took all of its

actions with respect to the Trustee Process Order and Summonses well in advance of the

petition date and Citizens and TD Ameritrade, inexplicably and independently, waited

until after the petition date to effectuate the restraint on the Debtor's accounts.  E.I.

perfected its attachments prepetition on December 16, 2015 when it served the

Summonses to Trustees.  "Under Massachusetts law, property to be attached remains

unencumbered until service of the attachment is made." deBenedictis v. Dougherty, No.

CV 14-12139-GAO, 2015 WL 4480724, at *2 (D. Mass. July 22, 2015).  *See also* Mass. Gen.

Laws ch. 246, § 20 (credits of the defendant are attached when trustee is summoned). In

short, the Debtor failed to show that E.I. intended any postpetition actions of the kind

described in § 362(a)(1) through (6), which resulted in the restraint on the Debtor's

accounts.  E.I. did not willfully violate the automatic stay in connection with the financial

institutions' actions in restraining the Debtor's accounts.

The next issue is whether E.I. willfully violated the automatic stay through its

*inaction* when it refused to release its trustee process attachments postpetition on January

16

4, 2016, when it had actual notice of the Debtor's bankruptcy filing.  E.I.'s stated reason
for failing to release the attachments was the Debtor's refusal to assure it that he would
not dissipate the funds in the account, which contained both exempt and nonexempt
funds, and because it had the right to seek adequate protection.

The Court finds that E.I. did not violate the automatic stay through its inaction and
failure to take action to effectuate a release of the attachments, especially considering the
unique circumstances of this Chapter 7 case.  The Debtor filed the Motion a mere six days
following the petition date, and one day after Mr. Jarmusik credibly testified that he first
became aware of the Debtor's bankruptcy filing.  The Section 341 meeting of creditors
was scheduled for February 4, 2016, and the Trustee has 30 days from that date, i.e.,
March 7, 2016, to challenge the Debtor's claim of exemptions.  *See* Fed. R. Bankr. P.
4003(b); *see also* <u>Zavala v. Wells Fargo Bank, (In re Zavala</u>), 444 B.R. 181, 188 (Bankr. E.D.
Cal. 2011) (a debtor's dollar amount exemption does not remove the asset from the
bankruptcy estate).  The Debtor's unilateral demand for release of the attachments on
December 31st made no distinction between the exempt and nonexempt portion of the
funds in the accounts.  While the Debtor testified that he was aware that some of the
funds in the accounts were nonexempt, the balance of the Joppa checking account had
increased since he claimed his exemptions on the petition date (due to the postpetition
direct deposit of the Debtor's prepetition wages), and the value of the brokerage account
was subject to stock market conditions.  The Court finds that E.I.'s request that the Debtor
not dissipate the funds was a reasonable, prudent and good faith effort to preserve the
rights of all parties.  The Debtor's attorney's failure to give such assurance was

unwarranted and unreasonable and has led to the protracted litigation which could have

been avoided had he simply agreed to preserve the status quo while *all* affected parties

determined their rights to the funds.  As stated by the Eighth Circuit Court of Appeals <u>In</u>

<u>re Knaus</u>, 889 F.2d 773 (8th Cir. 1989), when quoting from the Bankruptcy Court's opinion

on remand:

> The principle is simply this: that a person holding property of a debtor who
> files bankruptcy proceedings becomes obligated, upon discovering the
> existence of the bankruptcy proceedings, to return that property to the
> debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7
> proceedings). Otherwise, if persons who could make no substantial adverse
> claim to a debtor's property in their possession could, without cost to
> themselves, compel the debtor or his trustee to bring suit as a prerequisite
> to returning the property, the powers of a bankruptcy court and its officers
> to collect the estate for the benefit of creditors would be vastly reduced. The
> general creditors, for whose benefit the return of property is sought, would
> have needlessly to bear the cost of its return. And those who unjustly retain
> possession of such property might do so with impunity.

<u>Id</u>. at 775.  E.I.'s refusal to release the attachments on the accounts preserved the rights of

the Trustee.

The decisions in <u>Knaus</u> and <u>Thompson v. Gen. Motors Acceptance Corp., LLC</u>, 566

F.3d 699 (7th Cir. 2009), relied upon by the Debtor, involved debtors in Chapter 11 and

13 reorganization proceedings, respectively, and were not Chapter 7 cases.  Moreover,

unlike the creditor in <u>Thompson</u>, which had possession of the Chapter 13 debtor's car,

E.I. never sought or obtained possession of the Debtor's funds as they were held by third

party financial institutions.  Indeed, there is no way to know whether Citizens and/or

TD Ameritrade would have released the funds in the accounts to the Debtor even had E.I.

acquiesced to the Debtor's demand to release the trustee process attachments.  In other

words, even if E.I. released the attachments, the financial institutions may have continued

to restrict the Debtor's access to the funds in the accounts to await further instruction

from the Court and/or the Trustee. *See, e.g.,* Calvin v. Wells Fargo Bank, N.A. (In re

Calvin), 329 B.R. 589 (Bankr. S.D. Tex. 2005).

The Court need not determine whether E.I.'s request for adequate protection was

proper because no competent evidence of such a request was introduced at the

evidentiary hearing and because E.I. had a reasonable basis on which to refuse to release

the attachments due to the nascency of the Debtor's case and concerns about the Trustee's

rights to the nonexempt portion of funds in the accounts. Nonetheless, to the extent the

Debtor relies on United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S. Ct. 2309 (1983),

for the proposition that a creditor "must first relinquish possession of seized property

and then seek adequate protection of its interests," that reliance is misplaced as E.I. had

a reasonable basis to believe that any request for adequate protection would be moot in

light of the Debtor's refusal to assure it that he would not dissipate the funds in the

accounts upon release of the attachments.  Indeed, E.I.'s awareness of that risk predated

the bankruptcy filing.  Mr. Jarmusik testified that E.I. sought the Trustee Process Order

on an *ex parte* basis because there was a concern that the Debtor would withdraw funds

if given advance notice of an attachment, and the Middlesex Superior Court expressly

found a clear danger of the Debtor's removal or concealment of the funds in the accounts

when it issued the Trustee Process Order.  As observed by the court in Linsenbach  v.

Wells Fargo Bank (In re Linsenbach), 482 B.R. 522, 528 (Bankr. M.D. Pa. 2012) "'[t]he right

of adequate protection cannot be rendered meaningless by an interpretation of § 362(a)(3)

. . . that would compel turnover even before an opportunity for the court's granting adequate protection." (quoting In re Giles, 271 B.R. 903, at 906–07 (Bankr. M.D. Fla. 2002) and citing In re Bernstein, 252 B.R. 846, 850 (Bankr. D. D.C. 2000)(internal quotation omitted)). *See also* In re Kuzniewski, 508 B.R. 678 (Bankr. N.D. Ill. 2014) (it was not a violation of the automatic stay for judgment creditor and its counsel to fail to immediately take steps to either dismiss its citation or to cause bank to release its administrative hold on debtor's personal checking account); In re Hall, 502 B.R. 650, 660 (Bankr. D. D.C. 2014) ("If a creditor is required to turn over the asset before it can seek adequate protection, it might be irreparably harmed and lose the protection that § 363(e) is intended to provide.").

Whiting Pools is further distinguishable from this case as the issue of adequate protection in that case was determined in the context of a Chapter 11 reorganization in which the seizing creditor, the IRS, moved for a declaration that the automatic stay did not apply to it and the Chapter 11 debtor counterclaimed for turnover pursuant to 11 U.S.C. § 542.  E.I. did not have the luxury of court oversight when the Debtor made his demand for release of the attachments on funds which included amounts that would have to be turned over to the Trustee, and it was entitled to a reasonable amount of time to seek relief from the automatic stay to request adequate protection, as it now plans to do as stated in the Opposition to the Motion.  *See* Whiting Pools, 103 S. Ct. at 2315, n.17 ("Our analysis in this case depends in part on the reorganization context in which the turnover order is sought. We express no view on the issue whether § 542(a) has the same broad effect in liquidation  . . . proceedings."). This case is also distinguishable from STMIMA

20

Corp. v. Carrigg (In re Carrigg), 216 B.R. 303 (B.A.P. 1st Cir. 1998).  In Carrigg, a creditor violated the automatic stay when it obtained a title certificate to the debtor's truck postpetition and then refused to reassign title back to the debtor after the Bankruptcy Court had determined that the creditor did not hold a valid security interest in the vehicle.  In this case, there has been no determination that E.I. does not have a valid security interest in the Debtor's accounts.

Although E.I. had actual notice of the Debtor's bankruptcy filing on January 4, 2016, its inaction in failing to release its trustee process attachments of the funds in the Joppa checking and the brokerage accounts in this Chapter 7 case does not amount to an exercise of control over or an action to enforce a lien on property of the estate or property of the Debtor and did not constitute a willful violation of 11 U.S.C. § 362(a) (1), (2), (3), (4), (5) and/or (6).  The Court need not address at this juncture whether E.I.'s trustee process attachments are void or voidable as neither the Trustee nor the Debtor has requested or demonstrated that E.I.'s judicial liens are void or voidable under 11 U.S.C. §§ 522 and/or 547, and any such avoidance action would be subject to all of E.I.'s affirmative defenses. Unless and until such an action is commenced and resolved in favor of the Debtor or the Trustee, E.I.'s judicial liens remain valid and enforceable.

## VI. CONCLUSION

For the above stated reasons, the Motion is denied.  A separate Order shall enter.

The Court will address E.I's request for adequate protection in the context of a separately

filed motion for relief from stay, accompanied by the required filing fee.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 11, 2016